# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **BEVERLY S. WOODS,** | ) | |
|     Plaintiff | ) | |
| v. | ) | Civil Action No. 2:13cv00017 |
| | ) | **MEMORANDUM OPINION** |
| **CAROLYN W. COLVIN,** | ) | |
|  Acting Commissioner of | ) | |
|  Social Security, | ) | By: PAMELA MEADE SARGENT |
|     Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Beverly S. Woods, ("Woods"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying her claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423 and 1381 *et seq.* (West 2011 & West 2012). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the

case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Woods protectively filed her applications for SSI and DIB on April 21, 2009, alleging disability as of March 13, 2009, due to problems with her knees, back and right shoulder, bleeding ulcers and depression. (Record, ("R."), at 10, 184-85, 188-90, 200, 237, 257.) The claims were denied initially and upon reconsideration. (R. at 98-100, 106-09, 111-16, 118-20.) Woods then requested a hearing before an administrative law judge, ("ALJ"). (R. at 121.) A hearing was held on October 3, 2011, at which Woods was represented by counsel. (R. at 31-51.)

By decision dated October 27, 2011, the ALJ denied Woods's claims. (R. at 10-25.) The ALJ found that Woods met the disability insured status requirements of the Act for DIB purposes through September 30, 2009. (R. at 12.) The ALJ found that Woods had not engaged in substantial gainful activity since March 13, 2009, the alleged onset date. (R. at 12.) The ALJ found that the medical evidence established that Woods had severe impairments, namely bilateral knee derangement, history of right shoulder arthrosis, obesity, major depressive disorder, generalized anxiety disorder and post-traumatic stress disorder, ("PTSD"), but the ALJ found that Woods did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 12-14.) The ALJ found that Woods had the residual functional capacity to perform sedentary work,[1]

---

[1] Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties. Jobs are sedentary if walking or standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (2013).

that allowed for in-place position shifts, that did not require her to kneel, climb, crawl or operate foot controls, that required no more than occasional crouching, stooping and reaching overhead with the right upper extremity, that was limited to the performance of short, simple tasks with normal breaks and that required no more than seldom interaction with the public and occasional interaction with others in the workplace. (R. at 14.) The ALJ found that Woods was unable to perform her past relevant work. (R. at 23.) Based on Woods's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of jobs existed that Woods could perform, including jobs as a packer, an assembler and an inspector/tester/sorter. (R. at 24.) Thus, the ALJ concluded that Woods was not under a disability as defined by the Act and was not eligible for DIB or SSI benefits. (R. at 24-25.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2013).

After the ALJ issued his decision, Woods pursued her administrative appeals, but the Appeals Council denied her request for review. (R. at 1-5.) Woods then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2013). This case is before this court on Woods's motion for summary judgment filed December 18, 2013, and the Commissioner's motion for summary judgment filed January 21, 2014.

## II. Facts

Woods was born in 1967, (R. at 184, 188), which classifies her as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Woods has a high school education and past relevant work as a cook, a cashier, a machine operator

and an appliance repair person. (R. at 201, 223.) Woods testified that she was not receiving mental health treatment, other than being prescribed medications. (R. at 39.) She stated that she did not seek counseling due to transportation problems. (R. at 39-40.) Woods stated that she felt that her medications made things "a little better." (R. at 43.) However, she stated that she continued to seriously struggle with social anxiety. (R. at 43.)

Vocational expert, John Newman, testified at Woods's hearing. (R. at 45-50.) The ALJ asked Newman to consider a hypothetical individual who could perform sedentary work, who required in-place position shifts, who could not kneel, climb, crawl or operate foot controls, who could occasionally crouch and stoop and reach overhead with the right upper extremity, and who was limited to short, simple tasks with normal breaks involving no more than seldom public interaction and occasional interaction with others in the workplace. (R. at 47-48.) Newman identified jobs that existed in significant numbers in the national and regional economy that such an individual could perform, including jobs as an assembler, a packer, a stuffer and an inspector/tester/sorter. (R. at 48.) Newman stated that there would be no jobs available that the individual could perform should she be limited as indicated in the assessments of Miller, Spangler and Weitzman. (R. at 49-50, 491-93, 526-28.)

In rendering his decision, the ALJ reviewed records[2] from Virginia Public Schools; Louis Perrott, Ph.D., a state agency psychologist; Dr. Shirish Shahane, M.D., a state agency physician; Joseph Leizer, Ph.D., a state agency psychologist; Dr. Joseph Duckwall, M.D., a state agency physician; Johnston Memorial Hospital; Abingdon Orthopedic Associates, P.C.; Riverside Community Medical Clinic;

---

[2] Woods does not argue that the ALJ erred with regard to her physical residual functional capacity; therefore, I will address only the medical records pertaining to her alleged mental impairments.

-4-

Russell County Medical Center; D. Kaye Weitzman, L.C.S.W.; Kathy Jo Miller, M.Ed., a licensed psychological examiner; Robert S. Spangler, Ed.D., a licensed psychologist; Dr. Daniel L. Milam, D.O.; and Dr. Timothy G. McGarry, M.D.

The record shows that Woods received treatment from Dr. Margaret J. Gregorczyk, M.D., for her complaints of depression and anxiety beginning in 2003. (R. at 407, 417, 421.) On March 19, 2003, Woods complained of depression and anxiety resulting from life stressors. (R. at 407, 417.) Dr. Gregorczyk found no evidence of a thought process disorder and prescribed Zoloft. (R. at 407, 417.) On April 29, 2003, Woods reported doing great on Zoloft. (R. at 421.) Dr. Gregorczyk noted that Woods's anxiety and depression symptoms had improved tremendously with medication. (R. at 421.) Woods continued to report that her symptoms were well-controlled with medication through February 2005. (R. at 424, 428, 432.) On February 7, 2007, Woods reported that she had not worked since May 2002 due to anxiety. (R. at 452.) She stated that she could not handle dealing with the public. (R. at 452.) On May 8, 2007, Dr. Gregorczyk reported that Woods had a good affect. (R. at 457.) Her mood was mildly depressed and anxious. (R. at 457.) Her insight and judgment was described as good. (R. at 457.) On October 17, 2007, Woods had no complaints of anxiety and depression. (R. at 463-64.) Woods had a normal mental examination. (R. at 464.)

Woods was next seen by Dr. Gregorczyk on January 27, 2009. (R. at 467-68.) Mental examination was normal. (R. at 467-68.) Dr. Gregorczyk reported that Woods's anxiety and depression were in remission with medication. (R. at 468.) Woods continued to report that medication helped her symptoms of depression and anxiety. (R. at 327-28, 395, 476, 479, 565.) On June 4, 2010, Dr. Gregorczyk reported that Woods's anxiety and depression symptoms were stable, and she was doing well overall. (R. at 497.) Dr. Gregorczyk recommended counseling to assist

Woods with maintaining stability. (R. at 497.) On December 7, 2010, Woods reported that her depression was not as bad as before. (R. at 554.) Dr. Gregorczyk reported that Woods had a normal mental examination. (R. at 555.)

On July 9, 2009, Louis Perrott, Ph.D., a state agency psychologist, reported that Woods suffered from a nonsevere affective disorder and anxiety-related disorder. (R. at 57.) He found that Woods had no restriction on performing her activities of daily living, in maintaining social functioning and in maintaining concentration, persistence or pace. (R. at 57.) He also found that Woods had not experienced any episodes of decompensation for extended periods. (R. at 57.)

On February 25, 2010, Joseph Leizer, Ph.D., a state agency psychologist, reported that Woods suffered from a nonsevere affective disorder and anxiety-related disorder. (R. at 80-81.) He found that Woods had no restriction on performing her activities of daily living, in maintaining social functioning and in maintaining concentration, persistence or pace. (R. at 80.) He also found that Woods had not experienced any episodes of decompensation for extended periods. (R. at 80.) Leizer noted that the medical evidence of record documented depression and anxiety, but did not provide evidence that it was severe or that it would prevent her from performing the mental requirements of all levels of work. (R. at 81.)

On July 23, 2010, D. Kaye Weitzman, L.C.S.W., a licensed clinical social worker, saw Woods who reported that Zoloft was not as effective in controlling her depression. (R. at 518.) She reported having panic attacks with agoraphobia and generalized anxiety. (R. at 518.) Woods stated that Zoloft helped to decrease her symptoms of anxiety. (R. at 518.) Weitzman reported that Woods's mood was depressed, and she had an anxious affect. (R. at 518.) Her judgment and insight were reported as fair. (R. at 518.) Weitzman diagnosed major depressive disorder,

recurrent, moderate, panic disorder with agoraphobia; generalized anxiety disorder; and mood disorder. (R. at 518.) She assessed Woods's then-current Global Assessment of Functioning score, ("GAF"),[3] at 40.[4] (R. at 518.)

On August 2, 2010, Weitzman completed a mental assessment indicating that Woods had a seriously limited ability to follow work rules, to interact with supervisors, to understand, remember and carry out simple job instructions and to maintain personal appearance. (R. at 491-93.) Weitzman indicated that Woods had a seriously limited to no useful ability to demonstrate reliability. (R. at 492.) She also indicated that Woods had no useful ability to relate to co-workers, to deal with the public, to use judgment, to deal with work stresses, to function independently, to maintain attention/concentration, to understand, remember and carry out complex and detailed instructions, to behave in an emotionally stable manner and to relate predictably in social situations. (R. at 491-92.) Weitzman reported that Woods would miss more than two workdays a month. (R. at 493.)

On April 19, 2011, Kathy Jo Miller, M.Ed., a licensed psychological examiner, and Robert S. Spangler, Ed.D., a licensed psychologist, evaluated Woods at the request of Disability Determination Services. (R. at 520-25.) Woods demonstrated good concentration. (R. at 520.) Her mood and affect were within normal limits. (R. at 522.) Woods reported that she was able to handle day-to-day stressors and felt calmer while taking her medication. (R. at 524.) Miller and Spangler diagnosed generalized anxiety disorder, moderate to severe with

---

[3] The GAF scale ranges from zero to 100 and considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[4] A GAF score of 31-40 indicates that the individual has some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. *See* DSM-IV at 32.

-7-

medication; dysthymic disorder, moderate with medication; and low average intellectual functioning. (R. at 524.) Miller and Spangler assessed Woods's then-current GAF score at 50 to 55.[5] (R. at 524.)

Miller and Spangler completed a mental assessment indicating that Woods had a slight limitation in her ability to understand, remember and carry out complex instructions and to make judgments on complex work-related decisions. (R. at 526-28.) They indicated that Woods had a seriously limited, but not precluded, ability to interact appropriately with the public, supervisors and co-workers and to respond appropriately to usual work situations and to changes in a routine work setting. (R. at 526-27.)

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2013). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2013).

---

[5] A GAF score of 41-50 indicates that the individual has serious symptoms or serious impairment in social, occupational or school functioning. *See* DSM-IV at 32. A GAF score of 51-60 indicates that the individual has moderate symptoms or moderate difficulty in social, occupational or school functioning. *See* DSM-IV at 32.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2011 & West 2012); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

In her brief, Woods argues that the ALJ erred by improperly determining her residual functional capacity in that he formed his own conclusions as to the severity of her mental limitations. (Plaintiff's Motion For Summary Judgment And Memorandum Of Law, ("Plaintiff's Brief"), at 5-8.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

In this case, the ALJ found that Woods was limited to work that involved only short, simple tasks, no more than seldom public interaction and occasional

-9-

Case 2:13-cv-00017-PMS   Document 21   Filed 09/11/14   Page 9 of 11   Pageid#: 641

interaction with others in the workplace. (R. at 14.) Woods argues that the ALJ erred by rejecting the opinions of Weitzman and Miller. (Plaintiff's Brief at 7.) A medical opinion is entitled to greater weight when it is supported by relevant evidence, "particularly medical signs and laboratory findings," and when it is consistent with the "record as a whole." 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4). A medical opinion from an acceptable treating source is given "controlling" weight only when it is "well-supported" by "medically acceptable clinical and laboratory diagnostic techniques" and when it is "not inconsistent" with the other "substantial" evidence in the case. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The ALJ gave little weight to the opinion of Weitzman, noting that it was inconsistent with her own intake assessment, as well as being inconsistent with Dr. Gregorczyk's treatment notes documenting an improvement and stabilization in depression and anxiety. (R. at 22.) The ALJ also gave limited weight to the opinion of Miller and Spangler as it was inconsistent with their own findings and report. (R. at 23.) The ALJ also found that their opinion was inconsistent with Woods's activities of daily living, including participation in social activities, and Dr. Gregorczyk's treatment notes and findings. (R. at 23.) The ALJ further noted that Woods failed to follow up with recommendations for monthly counseling sessions, and she had not sought treatment from a psychiatrist or psychologist. (R. at 20.) Woods testified that she was unable to attend counseling due to transportation difficulties, but at various points in the record she reported being able to drive. (R. at 39-40, 521-22.) Dr. Gregorczyk often documented no psychiatric abnormalities on examination, and Woods repeatedly reported an improvement in symptoms with medication. (R. at 327-28, 395, 421, 424, 428, 432, 457, 463-64, 467-68, 476, 479, 497, 555, 565.) "If a symptom can be

reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986).

Based on this, I find that the ALJ properly weighed the medical evidence, and substantial evidence exists to support his finding with regard to Woods's mental residual functional capacity. An appropriate Order and Judgment will be entered denying Woods's motion for summary judgment, granting the Commissioner's motion for summary judgment and affirming the Commissioner's decision denying benefits.

DATED: September 11, 2014.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE